# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

UNITED STATES OF AMERICA,     )

   )

   )

v.     )        **Case No. 3:26-CR-14**

   )        **JUDGES CRYTZER/McCOOK**

   )

TYLER SHANE WELLS, et al.     )


## MOTION TO DISMISS FOR VIOLATIONS OF THE DUE PROCESS AND COMPULSORY PROCESS CLAUSES


Comes Defendant, Tyler Wells, through undersigned counsel and pursuant to Fifth Amendment (Due Process) and Sixth Amendment (Compulsory Process) to the United States Constitution, and respectfully moves the Court for an Order dismissing the indictment because the Government has removed material witnesses referenced in the Indictment from the United States.

### I.     Introduction

This is a case in which the Government has accused Mr. Wells of immigration related offenses for allegedly concealing, harboring and shielding six specifically referenced individuals knowing and in reckless disregard of the fact that the individuals had come to, entered and remained in the United States in violation of law. Thus, the immigration status of these individuals and Mr. Wells's knowledge of them and relationship with them are central to the allegations and the defense. Unfortunately, the United States Government has caused material witnesses to be unavailable by deporting or assisting them in leaving the United States.

Mr. Wells was arrested and initially arraigned on January 23, 2026. Undersigned counsel entered a notice of appearance on January 25, 2026. [Doc. 24]. The detention hearing was held on January 27, 2026. On January 29, 2026, Mr. Wells obtained the initial discovery production in this case. The only reference to the deported/removed witnesses was a short one-and-a-half page summary. On March 16, 2026, the government provided the "A Files" related to the witnesses at issue in a supplemental discovery production. These files showed information about where the individuals were taken after they were arrested at the jobsite. Based on information gathered from the A Files, and investigation, all of the witnesses detained on January 13, 2026, were either deported or assisted by the Government in making a "voluntary departure," depriving Mr. Wells the ability to interview and call them as witnesses in this case.

The Sixth Amendment guarantees defendants the right to "compulsory process for obtaining witnesses" that are considered favorable to their defense. U.S. Const. VI.

The Court addressed a claim of a compulsory process violation in a case where the government deported a witness in *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). The Supreme Court rejected the idea that deportation of a witness could alone establish a violation of the Fifth or Sixth Amendments; the Court instead clarified that in order to establish a violation under either the Fifth or Sixth Amendments, the defendant must put forth a plausible explanation of the assistance he would have received from the testimony of the deported witnesses. *Id*. at 871. The Sixth Circuit adopted a version of this test in *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984), finding that in order to find that the Government acted in good faith, the Court must find: 1) the witness testimony would not have been "both material and favorable to the defense," 2) the government did not facilitate the prompt deportation of the witness, and 3) "the witness's

prompt deportation didn't deprive the defendant an opportunity to interview the witness to determine precisely what favorable evidence he might offer." *Id*. at 1121.

However, after the Supreme Court decided *Arizona v. Youngblood*, the Sixth Circuit revisited this test and modified it into a two-part test. In light of the Supreme Court's decision in *Youngblood*, the Sixth Circuit's modified test requires "a defendant must first make an initial showing that the government has acted in bad faith, and, having made that showing, must then make some plausible showing that the testimony of the deported witness would have been both material and favorable to his defense." *United States v. Damra*, 621 F.3d 474, 489-90 (6th Cir. 2010) (citing *Valenzuela-Bernal*, 458 U.S. at 867; *Youngblood*, 488 U.S. at 58; *Dring*, 930 F.2d at 693-94). While Mr. Wells acknowledges that this Sixth Circuit precedent set in *Damra* is controlling at this time, this interpretation of *Valenzuela-Bernal* test goes beyond the scope of what the Supreme Court outlined as necessary to establish a compulsory-process violation. Mr. Wells wants to preserve this issue but is able to show a violation under both versions of the test.

Regardless of which test is used, Mr. Wells is entitled to relief because his Sixth Amendment rights were violated when the government deported the only six witnesses who are identified as individuals 1-6 in this indictment.[1] A "defendant's express right in the Sixth Amendment to compel the testimony of 'witnesses in his favor,' requires recognition of the importance, both to the individual defendant and to the integrity of the criminal justice system, of permitting the defendant the opportunity to interview eyewitnesses to the alleged crime. A

---

[1] For the sake of clarity in this motion, Mr. Wells assumes that the individuals 1-6 are the same individuals whose A Files have been provided in discovery. The pending Motion for a Bill of Particulars [Doc. 41] still applies to the superseding indictment, specifically to Count One, which alleges that the individuals are certain aliens, whose names are known and unknown to the grand jury. In contrast, Counts Four through Nine all state that each individual's name is known to the grand jury.

governmental policy of deliberately putting potential defense witnesses beyond the reach of compulsory process is not easily reconciled with the spirit of the Compulsory Process Clause." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 876 (1982) (J. O'Connor concurrence). This test is intended to balance a "defendant's right to present his version of events to the jury with the government's interest in enforcing the immigration laws by promptly deporting aliens who 'possess no material evidence relevant to a criminal trial.'" *United States v. Leal-Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012) (quoting *Valenzuela-Bernal*, 458 U.S. at 864-66).

**II.  Given the Allegations in this Case, It Was Readily Apparent that These Witnesses Would Have Material Information.**

The Government's knowledge that the witness has material evidence at the time of deportation satisfies the requirements for dismissal. *See United States v. Bresil,* 767 F.3d 124, 131 (1st Cir. 2014) (Finding the bad faith prong was satisfied when the government knew it was going to charge the defendant and what his defense would likely be and also knew that the witnesses that were deported at one point claimed to support this defense.); *see also United States v. Leal-Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012) ("If the government wants to deport the witness notwithstanding defense counsel's wishes, it must obtain permission from the district court on a showing of good cause, which defense counsel must have the opportunity to oppose; it must also afford defense counsel the opportunity to cross-examine the witness and preserve the testimony for trial.").

Further evidence supporting dismissal is the government's knowledge that these witnesses were material witnesses at the time of removal. On January 27, 2026, the Government argued repeatedly that Mr. Wells was causing material witnesses to disappear because the individuals who

fled from the jobsite were "material witnesses" in the prosecution of this case. Doc. 37, PageID#113-14. Three days later, on January 30, 2026, one of these material witnesses, H.H.F.[2] was granted voluntary departure and ordered to depart from the United States before March 1, 2026. In fact, voluntary departure was agreed to by the Attorney General in several of the individuals' cases. "The Immigration and Nationality Act gives the Attorney General discretion to permit aliens to voluntarily leave the country at their own expense." *Blanc v. United States AG*, 996 F.3d 1274 (11th 2021) (citing 8 U.S.C. § 1229c(a)(1)). This is a discretionary mechanism that can be granted either pre-conclusion of the hearing or post-conclusion.

In the documents from the "A File" regarding ATR, on an I-213 Form from 1/13/2026, Special Agent Wenger states that A.T.R. "was amenable to and declined incentivized VD." This same form also outlined the underlying incident that led to the ICE raid and the indictment. By January 15, 2026, he had been moved to Winn Correctional Center in Winnfield, Louisiana. On February 23, 2026, A.T.R. was granted pre-conclusion voluntary under provision § 240B(a) of the Immigration and Nationality Act, which is codified as 8 U.S.C. § 1229c.

C.R.P., another one of the individuals detained on January 13, 2026, was granted voluntary departure on February 10, 2026. His A File also notably includes a copy of a Joint Motion for Voluntary Departure on behalf of C.R.P. and the U.S. Department of Homeland Security. The addendum to that motion was signed and dated January 30, 2026.

---

[2] Out of an abundance of caution, Mr. Wells has abbreviated the names of the individuals who appear in the "A Files."

The A Files show that F.I.Z. was served with a Warrant for Removal and was processed for Reinstatement of Prior Order of Removal on January 13, 2026. Further, as of February 5, 2026, efforts to locate him in the ICE Online Detainee Locator System were unsuccessful.

At the detention hearing, the government preemptively addressed the relationship between Mr. Wells and the employees of the subcontractors. When discussing potential issues with knowledge, the government alleged that they are "sure that's some kind of defense that will probably surface at some point." Doc. 37, PageID# 122. The short summaries of the statements provided by these witnesses provide minimal information, but they do confirm that none of the individuals worked for Mr. Wells directly. Neither Mr. Wells, nor his employer were a direct employer of any of the witnesses.

All of this supports the conclusion that the Government has been aware, since the beginning of this case, that these witnesses would be able to provide favorable and material testimony to Mr. Wells's defense.

### III.    Mr. Wells Can Make A Plausible Showing of Materiality and Favorability

A defendant must demonstrate materiality and favorability either by some plausible avowal of how a witness may testify, or else by a plausible description of "the events to which a witness might testify, and the **relevance** of those events to the crime charged." *United States v. Damra*, 621 F.3d 474, 488 (6th Cir. 2010) (emphasis added); *see also Valenzuela-Bernal*, 458 U.S. at 871 ("In such circumstances it is of course not possible to make any avowal of how a witness may testify. But the events to which a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality."). The showing of materiality and favorability in this type of analysis is generally relaxed. When the

government deports witnesses quickly, "the specificity threshold of the required materiality showing" is lowered. *Id.* "Because prompt deportation deprives the defendant of an opportunity to interview the witnesses to determine precisely what favorable evidence they possess, [] a defendant cannot be expected to render a detailed description of their lost testimony." *Id.* at 873. In this case, Mr. Wells did not get the opportunity to interview the individuals before they were removed.

This case arises from an ICE raid that occurred on January 13, 2026. Generally speaking, all of the witnesses on the construction site are material witnesses to this case. The Government argued this point several times in Mr. Wells's detention hearing. The main point that the Government emphasized in the hearing was that the individuals who fled from ICE on January 13, 2026 were material witnesses in the case before this court. *See* Doc. 37, PageID#113 ("All of these individuals that he's causing to disappear are material witnesses and he knows that. That's active obstruction, not only generally in investigations but in this Court's prosecution or the government's prosecution of this case before this Court."); PageID#131 (the government argues that Mr. Wells's texts asking about two individuals who were missing from a work crew after the ICE raid were "material witnesses."); PageID#142 ("And if you hide material witnesses, you don't need to corruptly persuade them to testify falsely or testify in a certain way."). Likewise, in the Court's detention order, the Court significantly relied on the threat that Mr. Wells's conduct, if released, would "potentially make [illegal workers] unavailable as witnesses in this case." [Doc. 33-1, PageID# 94]. The Court found that the workers on the jobsite were "**relevant** witnesses" to this case. [Doc. 33-1, PageID# 95] (emphasis added).

Count One of the superseding indictment alleges that Mr. Wells, Mr. Bonilla-Servin, Mr. Bonilla-Sernin, and Mr. Pastore did knowingly and willfully conspire and agree with each other, knowing and in reckless disregard of the fact that certain aliens entered and remained in the United

States in violation of law, did conceal, harbor, and shield from detection such aliens in buildings and other places for the purpose of commercial advantage and private financial gain. Count One identifies "individual[s]" 1-6 as the aliens who entered and remained in the United States in violation of the law. The identities and legal status of each individual are essential elements of the charged offenses. Based on the "A Files" in discovery, at least two of the individuals, D.A.G. and H.H.F., have alternative aliases other than the names that were included in the interview summary. This is both material and favorable because the identities of the individuals is a critical fact that is necessary to establish the element of knowledge of the individual entering and staying in the United States unlawfully.

Likewise, Counts Four through Nine allege individual offenses of aiding and abetting the same predicate offense: concealing, harboring, and shielding. Each of these counts refers to separately identified violations, each alleging a separate offense under 8 U.S.C. § 1324(a)(1)(A)(iii). *See* Doc. 56, Page ID# 292. To prove aiding and abetting, the government must prove beyond a reasonable doubt "that all essential elements of the underlying crime were committed by someone." *United States v. Horton*, 847 F.2d 313, 322 (6th Cir. 1988) (citations omitted). The government must prove "that the defendant did something to help or encourage" the specific crime that is alleged as to the specific individual that is identified within each count. Sixth Circuit Committee on Pattern Jury Instructions, Pattern Criminal Jury Instruction § 4.01. The Government alleges that each of these individuals was shielded, harbored, or concealed in this case. If the six were able to testify, they would testify that they would testify that they did not work for Mr. Wells directly. *See Leal-Del Carmen*, 697 F.3d 964 at 971 (the Ninth Circuit pointing out that in a case where the defendant's role as a leader in the group was a critical part in proving the charged conduct, statements from a witness that the defendant did not "give orders" were

material.). The witnesses could also refute an allegation that Mr. Wells drove one or more of them to a hotel. *See* Doc. 37, PageID#117-18.

## IV.      Conclusion

It is beyond argument that the individuals specifically referenced in the Indictment were material witnesses. Mr. Wells had the right to interview and present them in his defense case through compulsory process. Yet the Government put them out of reach.

For these reasons, Mr. Wells asks that the indictment be dismissed.

Respectfully submitted this 30th day of April 2026.

*/s/ Georgia A. Miller*
WADE V. DAVIES [BPR #016052]
GEORGIA A. MILLER [BPR #041197]
The Davies Law Firm, PLLC
900 S. Gay Street, Suite 802
Knoxville, TN 37902
(865) 686-6333
wdavies@wadedavies.law
*Counsel for Tyler Wells*